# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY K. GOMEZ, | 1:04-cv-05495-LJO-GSA-PC |
| Plaintiff, | <u>FOURTH SCREENING ORDER</u> |
| v. | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE |
| EDWARD S. ALAMEIDA, JR., et al., | PROCEED ON THE FOURTH AMENDED COMPLAINT ONLY AGAINST DEFENDANT D. D. ORTIZ FOR RETALIATION, AND THAT ALL OTHER |
| Defendants. | CLAIMS AND DEFENDANTS BE DISMISSED WITHOUT LEAVE TO AMEND (Doc. 46.) |
| / | OBJECTIONS, IF ANY, DUE IN 30 DAYS |

**I.   BACKGROUND**

Jeffrey K. Gomez ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed his original Complaint on March 29, 2004. (Doc. 1.) On March 9, 2005, the Court dismissed Plaintiff's Complaint for failure to state a claim, with leave to amend. (Doc. 6.) On May 10, 2005, Plaintiff filed the First Amended Complaint. (Doc. 9.) On October 2, 2006, the Court dismissed the First Amended Complaint for failure to state a claim, with leave to amend. (Doc. 10.) On January 30, 2007, Plaintiff filed the Second Amended Complaint. (Doc. 18.) On October 15, 2008, the Court issued findings and recommendations to dismiss the Second Amended Complaint for failure to state a claim. (Doc. 21.) On November 20, 2008, Plaintiff filed objections and lodged a proposed Third Amended Complaint. (Docs. 22, 23.) On January 27, 2009, the Court vacated the findings and recommendations and filed the Third Amended Complaint. (Docs. 25, 26.)  On January 28, 2009, the Court issued an order directing Plaintiff to file a Fourth Amended Complaint curing deficiencies in the Third Amended Complaint. (Doc. 27.) On August 14,

1  2009, Plaintiff filed the Fourth Amended Complaint, which is now before the Court for
2  screening.  (Doc. 46.)
3  **II.     SCREENING REQUIREMENT**
4        The court is required to screen complaints brought by prisoners seeking relief against a
5  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The
6  court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally
7  "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek
8  monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).
9  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall
10  dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a
11  claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).
12        A complaint must contain "a short and plain statement of the claim showing that the
13  pleader is entitled to relief . . . ."  Fed.R.Civ.P. 8(a)(2).  Detailed factual allegations are not
14  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere
15  conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing
16  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).
17  "[P]laintiffs [now] face a higher burden of pleadings facts . . ," Al-Kidd v. Ashcroft, 580 F.3d
18  949, 977 (9th Cir. 2009), and while a plaintiff's allegations are taken as true, courts "are not
19  required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681
20  (9th Cir. 2009) (internal quotation marks and citation omitted).
21  **III.    SUMMARY OF FOURTH AMENDED COMPLAINT**
22        Plaintiff's Fourth Amended Complaint names seventy-seven defendants and twenty Doe
23  defendants, for violations of due process and equal protection, retaliation, failure to protect,
24  improper processing of inmate appeals, and claims arising from the Americans with Disabilities
25  Act ("ADA").  Plaintiff alleges as follows.
26            ***CSP-Sacramento, San Quentin State Prison, and Salinas Valley State Prison***
27        Plaintiff alleges that from April 1993 until January 2003, while he was incarcerated at
28  California State Prison-Sacramento, San Quentin State Prison, and Salinas Valley State Prison

("SVSP"), defendants violated his constitutional rights.  Plaintiff claims he was erroneously validated as an active gang member in 1995 at San Quentin.  Plaintiff filed a grievance but was paroled before he received a final decision; however, Plaintiff assumed the grievance was granted. In 2000, Plaintiff was re-incarcerated and transferred to SVSP.  An investigation was conducted to determine Plaintiff's gang status, but Plaintiff did not receive results of the investigation before he was transferred to Corcoran State Prison ("CSP").

### *Corcoran State Prison - Retention in the SHU and Retaliation*

On January 9, 2003, Plaintiff was transferred from SVSP to CSP and housed in facility/building 4B-4L which is designated for validated gang affiliates. On January 16, 2003, Plaintiff attended a classification hearing and a decision was made to retain him in the SHU because his file labeled him a member of the Aryan Brotherhood gang.

On February 18, 2003, after receiving information from the Gang Investigator at SVSP, CDCR Headquarters validated Plaintiff in writing as an "inactive" gang associate.  Plaintiff maintains that the "inactive" status entitled him to be released from the SHU into the General Population.

On March 11, 2003, defendants Schrednitz and Villareal issued a lock-up order retaining Plaintiff in the SHU, although they knew his "inactive" status had been confirmed.  On March 13, 2003, Plaintiff attended a classification hearing and vehemently objected to the lock-up order, referring to the February 18, 2003 validation.  Defendants D.D. Ortiz, Galaviz, Rings and Schrednitz recommended Plaintiff's retention in the SHU.  Defendant Galaviz said, "Welcome to Corcoran – 602 that."  Defendant Schrednitz told Plaintiff not to talk to "anyone" and "Don't go to Yard," if he ever wanted to be released to the General Population.

For months, Plaintiff gave notice to defendants of the February 18, 2003 validation of his "inactive" status, but they failed to release him from the SHU.

On May 13, 2003, three days before the expiration of his determinate SHU term for assault, Plaintiff was approved for retention in the Administrative Segregation Unit instead of the SHU.  On May 22, 2003, defendants D.D. Ortiz, R. Hall, and Schrednitz agreed, out of retaliation, to retain Plaintiff in the SHU, falsely documenting he was a validated gang associate.

On September 12, 2003, Plaintiff appeared before the Department Review Board (DRB). Defendant Kalvelage decided to retain Plaintiff in the validated SHU while an investigation was conducted, ignoring Plaintiff's explanation that SVSP had already conducted a full investigation that could be verified by phone.

On September 24, 2003, defendants D.D. Ortiz, G. Rangel and Schrednitz agreed to retain Plaintiff in the SHU. When Plaintiff objected that his retention was a "set up," defendant D.D. Ortiz stated, "Teach you to stop filing, think about that for the next six-year review." Plaintiff understood the reference to "filing" to refer to the filing of inmate grievances. Plaintiff filed grievances complaining about his retention in the SHU, but Defendants refused to release him. Plaintiff requested but was not given copies of documents forming the basis of his retention in the validated SHU, to allow him to adequately defend against the retention.

Defendant Monroe denied Plaintiff's due process and liberty interest by failing to go to a higher authority with facts of his unlawful retention. Plaintiff claims those acts also denied him the protections afforded similarly situated inmates.

On March 10, 2004, after a full investigation, Plaintiff's "inactive" status was validated by CDCR Headquarters, re-confirming the February 18, 2003 determination.

On March 18, 2004, defendants ignored the evidence of Plaintiff's "inactive" status and again agreed to retain him in the validated SHU. Plaintiff objected and defendant D. Stockman said, "You're done, 602 it!" and told the escort staff to remove him. Plaintiff filed a grievance, and defendant Andrews responded to the grievance despite the fact that a response by Andrews violated the impartiality requirement.

On May 17, 2004, Plaintiff received another lock-up order affirming he was properly designated "inactive" but nonetheless should be retained in the validated SHU building. On May 20, 2004, defendants Yamamoto, P. Stockman, Galaviz, and Schrednitz agreed to retain Plaintiff in the validated SHU, even though they were aware of Plaintiff's documentation.

Plaintiff is an ADA inmate who requires a cane. On October 5, 2004, defendants Norton and Monroe came to Plaintiff's cell and accused Plaintiff of refusing to exit the cell to speak to them. Plaintiff explained they had been misinformed and the issue was that he had been denied

4

1  his needed cane.  Defendant Norton responded by attempting to make it appear to the other
2  inmates in the unit that Plaintiff was an informant, potentially jeopardizing Plaintiff's safety, by
3  sliding documents – pre-2002 CDC 1030's – under his door while loudly saying, "You may now
4  have something to hide now."  Norton's comment was retaliatory because he wanted Plaintiff to
5  come out and interview, but Plaintiff could not because he had no cane.  Plaintiff contends that
6  Norton and Monroe's actions of serving him old CDC 1030 forms were intended to obstruct his
7  release from the SHU, and caused his DRB appearance to be cancelled.  Norton acted in
8  retaliation for Plaintiff filing a complaint against him.

9       On December 9, 2004, defendants held Plaintiff's classification hearing without his
10 presence, denying him an opportunity to present his views, and improperly decided to retain him
11 in the SHU.

12      On December 21, 2004, defendant Monroe conducted an interview as part of the prison's
13 first-level response to Plaintiff's prison complaint challenging the pre-2002 CDC 1030's.
14 Plaintiff objected that the interview was inappropriate because Monroe was involved and because
15 he was a lower rank than Norton.  The biased interview was relied upon to deny Plaintiff relief.

16      Plaintiff alleges that on numerous occasions between March 17, 2004 and April 5, 2005,
17 he was retaliated against for filing grievances, for making verbal complaints during ICC hearings,
18 and for complaining to the SHU building staff.  Defendants made false reports against him,
19 denied him access to the law library, denied him escort to medical exams, denied him interviews
20 regarding staff complaints, denied him the opportunity to appear at rules violation hearings
21 denied him showers except when handcuffed behind his back, denied him requests to see the
22 nurse or doctor, and denied him x-rays.

23      On April 12, 2005, defendant Norton further retaliated against Plaintiff by having
24 defendant Garcia serve Plaintiff with two CDC 1030 forms containing false information.
25 Defendants did not comply with 15 CCR § 3378(c)(6) et seq. which requires at least 24 hours to
26 review the documents and prepare a defense, allows Plaintiff to give a rebuttal documented by
27 prison staff, and requires Plaintiff to be provided with copies prior to submission of the
28 documents for consideration of his inactive status.  On July 29, 2005, a validation package was

submitted by defendant Norton, causing Plaintiff to be retained in the SHU. On August 1, 2005, another lock-up order was issued. On August 4, 2005, a classification hearing was held and defendants Ortiz, Stockman, and Schrednitz ignored Plaintiff's objections and agreed among themselves to retain him in the SHU.

On October 12, 2005, defendants Norton and Dotson came to Plaintiff's cell to interview him concerning a complaint Plaintiff filed against Norton. Plaintiff refused, explaining that Norton was prohibited from conducting a formal level interview concerning complaints against him. A heated discussion ensued, and Norton exclaimed, "It don't really matter because your (*sic*) a done deal anyway!" and walked off. That evening, Plaintiff received documentation dated August 15, 2005 that he had been validated as an "active" member of the Aryan Brotherhood. Plaintiff claims the decision to re-validate him was based on false allegations and Plaintiff was not given the opportunity to present evidence on his behalf.

On November 1, 2005, defendants Schrednitz and Keener issued another lock-up order causing Plaintiff to be retained in the SHU, despite his "inactive" status from February 18, 2003. Schrednitz' and Keener's actions were taken out of retaliation for Plaintiff filing grievances while at CSP and for writing to Warden Scribner about prison staff misconduct. On November 3, 2005, Schrednitz delivered five CDC 1030's to Plaintiff, based upon confidential memoranda that were used to validate him in 1995. The 1995 decision was based upon erroneous confidential information as follows:

1) that Plaintiff ordered a stabbing that an inmate refused to commit;
2) that Plaintiff had a piece of sprinkler while in CSP-Sacramento Ad-Seg;
3) that Plaintiff ordered and directed stabbing assaults at CSP-Sacramento; and
4) that Plaintiff was a mail drop in May 1993 at CSP-Sacramento.

Plaintiff contends his retention in the SHU was retaliatory based on his filing of numerous complaints and advising of his intent to sue. Schrednitz agreed that Plaintiff should have been released from the SHU in 2003 and said, "Look you pissed off a lot of people with your filing paperwork, the Associate Wardens, Captains, Lieutenants, and everyone down the line, my superiors told me to issue the 1030's, so blame them."

On February 9, 2006, defendants agreed to continue to retain Plaintiff in the SHU despite defendant Garcia's admission that he had reviewed the confidential memoranda and found them unreliable. On November 13, 2006, Plaintiff's administrative appeal was granted and a modification order was issued reversing the August 15, 2005 re-validation actions. However, Plaintiff continued to be housed in the SHU.

On December 21, 2006, defendant R. Lopez threatened to have C/O Castro confiscate all of Plaintiff's personal property unless he accepted a validated gang cellmate. Plaintiff began talking and Lopez cut him off, exclaiming, "That's exactly why you're gonna be celled with inmate Clark. We're tired of your filing bullshit, and one way or the other, we are gonna settle it!" Lopez ordered that Plaintiff be escorted to the holding cages so he could sign the compatibility form to cell with Clark. Plaintiff told Lopez he could not take Plaintiff's property, because Plaintiff had legal deadlines, and Lopez responded, "I don't care! Try me!" In fear of consequences, Plaintiff signed the compatibility form and was moved in with inmate Clark.

Plaintiff claims his SHU retention caused him mental anguish because he was confined to his cell approximately twenty-two-and-a-half hours per day and denied access to education and vocation, phone, contact visits, and religious services, and he was limited to only one food/clothing package per year and $45.00 per month in canteen, whereas in the General Population, inmates are confined to their cells approximately eight hours per day and are allowed four food/clothing packages per year, $180.00 per month in canteen, and contact visits.

***ADA Claims***

Plaintiff suffers from chronic tendinitis, arthritis, foot and back problems, old injuries, a cracked pelvis, right hip separation, broken tibia, and a compound fractured right forearm. He requires special shoes, a cane, and placement in waist chain restraints instead of handcuffs when being escorted by prison staff. Without a cane, Plaintiff suffers excruciating pain that begins in his back and radiates down his legs and to his neck and shoulders. Those effects can last for several days from a single incident, forcing Plaintiff to remain sedentary, to be unable to go outdoors, to suffer from loss of sleep and loss of appetite, and to experience stress and anxiety, loss of dignity, and feelings of helplessness and humiliation.

On September 3, 2004, defendant Cheecha took Plaintiff's cane and refused to return it. For months, Plaintiff gave frequent notice to defendants of his need for the cane and waist chains, without result. Plaintiff notified defendant Rickman who stated, "602 it. You 602 everything else!" Plaintiff filed a prison grievance. Without his cane or waist chains, Plaintiff was unable to be interviewed, attend his 602 hearings, attend the law library, take showers, participate in medical exams, or exercise outdoors. Plaintiff was also denied a wheelchair to go outdoors because he did not have a wheelchair chrono.

Plaintiff requests monetary damages and declaratory and injunctive relief.

## IV.  PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).

### A.  Venue

This Court lacks venue to adjudicate Plaintiff's claims arising at San Quentin State Prison and Salinas Valley State Prison. Venue is proper in this Court only for those claims which arose in the Fresno Division of the Eastern District of California. Claims based on events which occurred at San Quentin State Prison or Salinas Valley State Prison must be brought in the Northern District of California. See Costlow v. Weeks, 790 F.2d 1486, 1488 (9th Cir. 1986) (court may raise defective venue sua sponte); see also Davis v. Mason County, 927 F.2d 1473, 1479 (9th Cir. 1991) (courts have broad discretion regarding severance). Therefore, this action may proceed only on Plaintiff's claims arising from events occurring at Corcoran State Prison, which is located in the Fresno Division of the Eastern District of California. Plaintiff's claims arising from events occurring at San Quentin State Prison and Salinas Valley State Prison must

///

be dismissed from this action, without prejudice to being raised in a separate action filed in the Northern District of California.

### B. Rule 18

Plaintiff alleges multiple claims in the Fourth Amended Complaint that are unrelated. Plaintiff first brings claims that he was improperly retained in the SHU, with events occurring at CSP between 2003 and 2006. Plaintiff also brings claims that his rights under the ADA were violated, with events beginning in September 2004. Plaintiff may not proceed in one action on a myriad of unrelated claims against different staff members. "The controlling principle appears in Rule Fed.R.Civ.P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Moreover, Plaintiff's ADA claims arose after the date this lawsuit was filed. Under Rule 15(d), as discussed next in this order, claims arising after March 29, 2004 must be dismissed from this action. Therefore, Plaintiff's ADA claims must be dismissed from this action, without prejudice to raising those claims in a separate action.

### C. Rule 15(d) - Events Occurring After March 29, 2004

Rule 15(d) of the Federal Rules of Civil Procedure provides, "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." A party may only file a supplemental complaint with leave of court. Fed. R. Civ. P. 15(d).

Plaintiff's allegations in the Fourth Amended Complaint include events occurring after the original Complaint for this action was filed on March 29, 2004. Such later-occurring events are properly brought, with leave of court, as part of a supplemental complaint. However, Plaintiff did not request, and was not granted, leave to file a supplemental complaint or add later-occurring events to the Fourth Amended Complaint. Therefore, the Court finds that Plaintiff's claims based on allegations of events occurring after March 29, 2004 must be dismissed from this action.

### D. Due Process

The Due Process Clause protects against the deprivation of liberty without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Id. Liberty interests may arise from the Due Process Clause itself or from state law. Id. The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Id. Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995). Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

#### 1. Retention in the SHU

Plaintiff argues that he had a liberty interest in being released from the SHU into Administrative Segregation or the General Population. The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of segregation. See Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). In Sandin, the Supreme Court abandoned earlier case law which had held that states created protectable liberty interests by way of mandatory language in prison regulations. Sandin, 515 U.S. at 481-84. Instead, the Court adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. Id. In doing so, the Court held that liberty interests created by prison

10

1 regulations are limited to freedom from restraint which "imposes atypical and significant
2 hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.
3      Plaintiff has alleged no facts that establish the existence of a liberty interest in remaining
4 free from the SHU. See May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's
5 due process claim fails because he has no liberty interest in freedom from state action taken
6 within sentence imposed and administrative segregation falls within the terms of confinement
7 ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443,
8 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of
9 confinement normally expected by inmates in relation to ordinary incidents of prison life and,
10 therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU)
11 (quotations omitted). Plaintiff claims he was confined to his cell approximately twenty-two-and-
12 a-half hours per day and denied access to education and vocation, phone, contact visits, and
13 religious services, and he was limited to only one food/clothing package per year and $45.00 per
14 month in canteen. These allegations are not sufficient to demonstrate that Plaintiff's retention in
15 the SHU constituted an atypical and significant hardship on him in relation to the ordinary
16 incidents of prison life. Sandin, 515 U.S. at 484. Plaintiff has not alleged that confinement in
17 the SHU was materially different from those conditions imposed on inmates in purely
18 discretionary segregation, such as in Administrative Segregation.

19      **2.      Classification - Gang Affiliate**

20      Plaintiff claims that in 1995 false information was used to classify him as an "active"
21 affiliate of the Aryan Brotherhood prison gang. Due to this classification, Plaintiff's file was
22 given an "active" gang affiliate label. Plaintiff claims that on February 18, 2003, defendants at
23 CSP received documentation from CDCR Headquarters confirming Plaintiff was an "inactive"
24 gang affiliate. Plaintiff alleges that despite knowledge of this documentation, defendants
25 erroneously continued to classify him as an "active" gang member.
26      The Due Process Clause itself does not confer on inmates a liberty interest in a particular
27 classification status. See Moody v. Daggett, 429 U.S. 78, 88, n.9 (1976). The existence of a
28 liberty interest created by state law is determined by focusing on the nature of the deprivation.

1  Sandin, 515 U.S. at 481-84.  Liberty interests created by state law are generally limited to
2  freedom from restraint which "imposes atypical and significant hardship on the inmate in relation
3  to the ordinary incidents of prison life."  Id. at 484.
4        In the instant case, Plaintiff has not adequately alleged that his classification as an
5  "active" gang affiliate subjected him to conditions constituting an "atypical and significant"
6  hardship.  As discussed above, Plaintiff's allegations of discomfort and loss of privileges in the
7  SHU do not support a finding of atypical or significant hardship in relation to the ordinary
8  incidents of prison life.
9        Even if Plaintiff had alleged facts sufficient to establish the existence of a liberty interest
10 in being classified as an "inactive" gang affiliate or remaining out of the SHU, Plaintiff has not
11 alleged facts sufficient to support his claim he was deprived of the procedural due process
12 protections he was due.  In matters of internal security, courts have accorded great deference to
13 the decisions of prison administrators.  A lesser quantum of process is due a state prisoner placed
14 in segregation for administrative reasons, Hewitt, 459 U.S. at 474, than is required to punish a
15 prisoner for a disciplinary infraction, Wolff v. McDonald, 418 U.S. 539 (1974).  An inmate must
16 merely receive some notice of the charges against him and an opportunity to present his views to
17 the prison official charged with deciding whether to transfer him to administrative segregation.
18 So long as this occurs, and the decision maker reviews the charges and then-available evidence
19 against the prisoner, the Due Process Clause is satisfied.  Hewitt, 459 U.S. at 476; see also,
20 Toussaint v. McCarthy, 801 F.2d 1080, 1101 (9th Cir.1986), cert. denied, 481 U.S. 1069 (1987).
21       Because Plaintiff has not established the existence of any liberty interest entitling him to
22 procedural due process protections, his due process claim fails as a matter of law.
23    **E.    Retaliation**
24       Plaintiff claims that defendants acted against him out of retaliation by retaining him in the
25 SHU for no legitimate reason, because he filed prison grievances, threatened court action, made
26 verbal complaints during ICC hearings, and complained to the SHU building staff.
27       "Within the prison context, a viable claim of First Amendment retaliation entails five
28 basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2)

12

because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486 F.3d 1025 (8th Cir. 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

The Court finds that Plaintiff's allegations against defendant D.D. Ortiz support a cognizable retaliation claim. However, none of Plaintiff's other allegations demonstrate personal participation by a defendant in the deprivation of Plaintiff's First Amendment rights. There is no support for a finding that simply because defendants agreed to retain Plaintiff in the SHU, signed lock-up orders, or otherwise acted against Plaintiff, that their actions were taken because Plaintiff participated in protected activities. Conclusory assertions that Plaintiff was retaliated against by defendants, with the general description of events that may or may not be adverse enough to rise to the level of a constitutional violation, do not support the existence of a plausible retaliation claim against defendants named in this action. Iqbal, 129 S.Ct. at 1949-50. Plaintiff has acknowledged that his file labeled him as an active member of the Aryan

Brotherhood gang, that he was retained in the SHU pending investigations of his status, that defendants relied on evidence that he was an active gang associate, and that during one time period he was retained in the SHU on assault charges. These facts do not support a claim that during the entire span of Plaintiff's allegations from 2003 to 2006, Plaintiff's retention in the SHU did not reasonably advance any legitimate correctional goals.

### F.     Supervisory Liability

Government officials may not be held liable, under Bivens or § 1983, for unconstitutional conduct of their subordinates under a theory of respondeat superior. Iqbal, 129 S.Ct. at 1948. "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. In a § 1983 suit or a Bivens action-where masters do not answer for the torts of their servants-the term "supervisory liability" is a misnomer. Id. at 1949. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. Id.  Therefore, Plaintiff's claims against defendants based on supervisory liability must be dismissed from this action.

### G.     Official Capacity

Plaintiff brings this action against defendants in both their official and individual capacities. Plaintiff may not bring suit against defendants in their official capacities. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities. Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003).

"Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." Hafer, 502 U.S. at 25; Suever v. Connell, 579 F.3d 1047, 1060 (9th Cir. 2009). Where a plaintiff is seeking damages against a state official and the complaint is silent as to capacity, a personal capacity suit is presumed given the bar against an

///

14

official capacity suit.  Shoshone-Bannock Tribes v. Fish & Game Comm'n, 42 F.3d 1278, 1284 (9th Cir. 1994); Price v. Akaka, 928 F.2d 824, 828 (9th Cir. 1991).

Accordingly, Plaintiff fails state a claim for damages against any of the defendants in their official capacities.

### H. Inmate Appeals Process

Plaintiff alleges that defendants failed to respond properly to his inmate appeals. Defendants' actions in responding to Plaintiff's appeals, alone, cannot give rise to any claims for relief under section 1983 for violation of due process.  "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).  Actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability under a section 1983 action. Buckley, 997 F.2d at 495.  Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails, and is unable to state a cognizable claim for the processing and/or reviewing of his 602 inmate appeals.

### I. Equal Protection

Plaintiff claims he was denied the protections afforded similarly situated inmates.  The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985).  An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001), or that similarly situated individuals were intentionally treated differently without a

15

rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008). A plaintiff must allege sufficient facts either showing intentional unlawful discrimination or that are at least susceptible of an inference of discriminatory intent. Iqbal, 129 S.Ct. at 1949-50.

Plaintiff has not alleged any facts demonstrating that he is being intentionally discriminated against on the basis of his membership in a protected class, or that he is being intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Therefore, Plaintiff fails to state a claim for relief for violation of his rights to equal protection.

### J. Failure to Protect

Plaintiff claims that Defendant Norton attempted to make it appear to the other inmates in Plaintiff's unit that Plaintiff was an informant, potentially jeopardizing Plaintiff's safety, by sliding documents under his door while loudly saying, "You may now have something to hide now."

Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a

///

substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

Plaintiff's allegations against defendant Norton do not demonstrate that Norton knew of and disregarded an excessive risk to Plaintiff's safety. Therefore, Plaintiff fails to state a claim for failure to protect under the Eighth Amendment.

### K.     Declaratory/Injunctive Relief

Plaintiff requests monetary, declaratory, and injunctive relief. With regard to declaratory relief, "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. A declaration that defendant violated Plaintiff's rights is unnecessary.

Plaintiff requests injunctive relief via a court order requiring prison officials to stop the harassment and retaliation against him, afford him due process to address his retention in the

SHU, and retain the named defendants' contact information. The court cannot award the aforementioned forms of relief sought by Plaintiff.

Any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. 18 U.S.C. §3626(a)(1)(A).

As discussed above, Plaintiff claims that defendants retaliated against him, violated his due process rights, failed to properly respond to his appeals, and denied him equal protection. The injunctions requested by Plaintiff would not remedy the past violation of Plaintiff's Constitutional rights. Therefore, the injunctive relief that Plaintiff is seeking is not narrowly drawn to correct the alleged past violations.

For the foregoing reasons, the Court finds that this action is a damages action only.

**L.   No Leave to Amend**

Plaintiff has been granted four opportunities to amend the complaint, each time with guidance by the Court. Plaintiff has now filed five complaints in this action, adding claims and defendants to each complaint.[1] Plaintiff has had ample opportunity to amend his complaint, with detailed guidance by the Court. Based on these facts, the Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Accordingly, the Court shall recommend that all of Plaintiff's claims be dismissed from this action, except the claim for retaliation against defendant D. D. Ortiz, without leave to amend.

---

[1] The original Complaint named six defendants and brought only one claim, for violation of Plaintiff's due process rights. In the Fourth Amended Complaint, Plaintiff names seventy-seven defendants and twenty Doe defendants and brings multiple claims based on allegations spanning thirteen years from 1993 to 2006.

## V. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, it is HEREBY RECOMMENDED that:

1. This action proceed against only against defendant D. D. Ortiz for retaliation, and all other claims and defendants be dismissed from this action without leave to amend;

2. Plaintiff's claims arising from events occurring at San Quentin State Prison and Salinas Valley State Prison be dismissed from this action for lack of venue;

3. Plaintiff's ADA claims be dismissed under Rule 18, without prejudice to raising those claims in a separate action;

4. Plaintiff's claims arising from events occurring after March 29, 2004, be dismissed from this action;

5. Plaintiff's due process claims, supervisory liability claims, claims against defendants in their official capacities, claims for inadequate appeals process, equal protection claims, claims for failure to protect, and claims for declaratory and injunctive relief be dismissed based on Plaintiff's failure to state a claim upon which relief may be granted; and

6. All other named defendants and the twenty Doe defendants be dismissed for Plaintiff's failure to state a claim upon which relief may be granted against them.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **November 15, 2010**            **/s/ Gary S. Austin**

UNITED STATES MAGISTRATE JUDGE