UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY KEVIN GOMEZ,<br><br>Plaintiff,<br><br>vs.<br><br>EDWARD S. ALAMEIDA, JR., et al.,<br><br>Defendants. | 1:04-cv-05495-LJO-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT ORTIZ'S MOTION TO DISMISS FOR FAILURE TO EXHAUST BE GRANTED, WITHOUT PREJUDICE<br>(Doc. 89.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

## I.     BACKGROUND

Jeffrey Kevin Gomez (Plaintiff) is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on January 21, 2004 at the United States District Court for the Northern District of California. (Doc. 1.) The case was subsequently transferred to the Eastern District of California on March 29, 2004. (Id.) This action now proceeds with Plaintiff's Fourth Amended Complaint filed on August 14, 2009, against defendant Acting Chief Deputy Warden D.D. Ortiz (Defendant) for retaliation in violation of the First Amendment. (Doc. 46.)

On August 20, 2012, Defendant filed a motion for summary judgment and a motion to dismiss for failure to exhaust administrative remedies.[1] (Doc. 89.) On October 15, 2012, Plaintiff filed an opposition to the motion. (Doc. 96.) On October 22, 2012, Defendant filed a

---

[1] On January 22, 2013, the Court granted Defendant's ex parte application for leave to argue lack of exhaustion of administrative remedies in the motion for summary judgment. (Doc. 106.)

reply to the opposition.[2]  (Doc. 96.)  Defendant's motion for summary judgment and motion to dismiss are now before the Court.

## II.   PLAINTIFF'S ALLEGATIONS AND CLAIMS[3]

On January 9, 2003, Plaintiff was transferred from Salinas Valley State Prison (SVSP) to Corcoran State Prison (CSP) and housed in facility/building 4B-4L which is designated for validated gang affiliates.  On January 16, 2003, Plaintiff attended a classification hearing, and a decision was made to retain him in the Security Housing Unit (SHU) because his file labeled him as a member of the Aryan Brotherhood gang.

On February 18, 2003, after receiving information from the Gang Investigator at SVSP, CDCR Headquarters validated Plaintiff in writing as an "inactive" gang associate.  Plaintiff maintains that the "inactive" status entitled him to be released from the SHU into the General Population.

On March 11, 2003, defendants Schrednitz and Villareal issued a lock-up order retaining Plaintiff in the SHU, although they knew his "inactive" status had been confirmed. On March 13, 2003, Plaintiff attended a classification hearing and vehemently objected to the lock-up order, referring to the February 18, 2003 validation.  Defendants D.D. Ortiz, Galaviz, Rings and Schrednitz recommended Plaintiff's retention in the SHU.  Defendant Galaviz said, "Welcome to Corcoran – 602 that."  (4ACP, Doc. 46 at 17 ¶107.)  Defendant Schrednitz told Plaintiff not to talk to "anyone" and "Don't go to Yard," if he ever wanted to be released to the General Population.  (Id.)

---

[2]Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment and an unenumerated Rule 12(b) motion on May 11, 2011.  (Doc. 62-1.)  Subsequent to Defendant's filing of the motion for summary judgment, Plaintiff was again provided with notice of the requirements for opposing a motion for summary judgment on August 20, 2012 and August 30, 2012.  (Docs. 90, 91.)  On February 12, 2013, the Court again provided Plaintiff with notice of the requirements for opposing an unenumerated Rule 12(b) motion. (Doc. 107.)  Woods v. Carey, 684 F.3d 934 (9th Cir. 2012) Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003); Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998). (Doc. 107.)  In light of the Court's February 12, 2013 notice, the Court granted Plaintiff the opportunity to withdraw his previous opposition of October 15, 2012 and file an amended opposition to Defendant's motion.  (Id.)  On May 6, 2013, Plaintiff filed a response to the Court indicating his intention to rest on his October 15, 2012 opposition.  (Doc. 110.)  Defendant's motion is now deemed admitted to the Court.  Local Rule 230(l).

[3] This partial summary of the Fourth Amended Complaint contains Plaintiff's allegations against defendant D.D. Ortiz, upon which this case now proceeds, along with background information.

For months, Plaintiff gave notice to defendants of the February 18, 2003 validation of his "inactive" status, but they failed to release him from the SHU.

On May 13, 2003, three days before the expiration of his determinate SHU term for assault, Plaintiff was approved for retention in the Administrative Segregation Unit instead of the SHU. On May 22, 2003, defendants D.D. Ortiz, R. Hall, and Schrednitz agreed, out of retaliation, to retain Plaintiff in the SHU, falsely documenting that he was a validated gang associate.

On September 12, 2003, Plaintiff appeared before the Department Review Board. Defendant Kalvelage decided to retain Plaintiff in the SHU while an investigation was conducted, ignoring Plaintiff's explanation that SVSP had already conducted a full investigation that could be verified by phone.

On September 24, 2003, defendants D.D. Ortiz, G. Rangel and Schrednitz agreed to retain Plaintiff in the SHU. When Plaintiff objected that his retention was a "set up," defendant D.D. Ortiz stated, "Teach you to stop filing, think about that for the next six-year review." (4ACP at 19 ¶112.) Plaintiff understood the reference to "filing" to refer to the filing of inmate grievances. Plaintiff filed grievances complaining about his retention in the SHU, but officials refused to release him. Plaintiff requested but was not given copies of documents forming the basis of his retention in the validated SHU, to allow him to adequately defend against the retention.

Plaintiff claims his SHU retention caused him mental anguish because he was confined to his cell approximately twenty-two-and-a-half hours per day and denied access to education and vocation, phone, contact visits, and religious services, and he was limited to only one food/clothing package per year and $45.00 per month in canteen, whereas in the General Population, inmates are confined to their cells approximately eight hours per day and are allowed four food/clothing packages per year, $180.00 per month in canteen, and contact visits.

### *Retaliation Claim*

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate

3

(2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006).

### III.     MOTION TO DISMISS FOR FAILURE TO EXHAUST

#### A.     Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 435 U.S. 516, 532, 122 S.Ct. 983 (2002).

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Wyatt, 315 F.3d at 1119. The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. Wyatt at 1119 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)). In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. Wyatt at 1119-20. If

the Court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Id.

The Court takes judicial notice of the fact that the California Department of Corrections and Rehabilitation (CDCR) has an administrative grievance system for prisoner complaints. Cal.Code Regs., tit. 15 § 3084.1 (2003). The process is initiated by submitting a CDC Form 602. Id. at § 3084.2(a). In 2003, prisoners were required to submit appeals within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level. Id. at §§ 3084.5, 3084.6(c). Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level." Id. at § 3084.5. In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford v. Ngo, 548 U.S. 81, 85 (2006); McKinney, 311 F.3d. at 1199-1201.

### B.     Defendant Ortiz's Motion

Defendant Ortiz moves to dismiss this action on the ground that Plaintiff failed to exhaust the CDCR's administrative appeals process regarding his claims against Defendant. Defendant argues that Plaintiff did not file any administrative appeal against Defendant between January 9, 2003 and March 29, 2004. (Declaration of T. Campbell (Campbell Decl.), Exh. D. to Defendant's Separate Statement of Undisputed Facts, Doc. 89-2 at 41 ¶¶6-7.) Defendant asserts that Plaintiff filed seven appeals pertaining to his incarceration in the SHU between January 9, 2003 and March 29, 2004 which were accepted for review.[4] Defendant describes, discusses, and provides copies of seven appeals by Plaintiff: (1) log number COR-03-1902, submitted on January 23, 2003; (2) log number COR-03-2314, submitted on April 11, 2003; (3) log number COR-03-2208, submitted on April 23, 2003; (4) log number COR-03-

---

[4] T. Campbell states that a search of the records "revealed that Plaintiff has filed *six* appeals pertaining to his incarceration;" however, Campbell lists and describes *seven* appeals filed between January 9, 2003 and March 29, 2004. (Campbell Decl., Doc. 89-2 at 42-44 ¶¶7-14.) (emphasis added.)

3503, submitted on July 30, 2003; (5) log number COR-04-186, submitted on September 12, 2003; and (6) log number COR-03-4497, submitted on September 13, 2003.  (Motion, Doc. 89 at 14-15; Campbell Decl., Doc. 89-2, Exhs. A-G.)  Defendant asserts that these are Plaintiff's only appeals concerning his SHU detention which were submitted during the stated time period and accepted for review. (Campbell Decl. ¶7.)  Defendant also asserts that none of the seven appeals alleges that defendant Ortiz retaliated against Plaintiff, or makes any allegations against defendant Ortiz.  Id.

### C. **Plaintiff's Opposition**

The Court looks to Plaintiff's opposition filed on October 15, 2012 and Plaintiff's five complaints filed on January 24, 2004, May 10, 2005, January 30, 2007, January 27, 2009, and August 14, 2009.[5]  (Docs. 1, 9, 18, 26, 46.)

Plaintiff argues that he exhausted his administrative remedies, because he filed appeals naming defendant Ortiz and placing Ortiz and the prison on notice of his allegations against Ortiz.  Plaintiff claims that in addition to the seven administrative appeals found by Defendant, he filed seven more appeals during the stated time period, of which five are directly or indirectly related to Plaintiff's retention in the SHU.  Plaintiff asserts that Defendant Ortiz is named in three of the appeals as to specific claims, and argues that defendant Ortiz is well aware of the numerous appeals that Plaintiff has filed, because Ortiz signed off on twelve of Plaintiff's fifteen appeals.  Plaintiff provides evidence that he also submitted a claim to the State of California Board of Control, Doc. 96 at 125-129, and asserts that he also wrote to the Warden, informing the Warden of violations of state and federal laws, putting him on notice that civil action could be taken.  Plaintiff also asserts that he named defendant Ortiz in appeal

///

---

[5] In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact.  Wyatt, 315 F.3d at 1119-20.  Plaintiff signed the Complaint, First Amended Complaint, Second Amended Complaint, Third Amended Complaint, and Fourth Amended Complaint under penalty of perjury.  (Doc. 1 at 4; Doc. 9 at 40; Doc. 18 at 48; Doc. 26 at 3; and Doc. 46 at 3.)  Therefore, Plaintiff's opposition to the motion to dismiss is based in part on the evidence in his verified complaints and their accompanying exhibits.  Plaintiff's declaration in support of his opposition is also verified. (Doc. 96 at 32-33.)

COR-03-1902, and indirectly named Ortiz, who is head of the ICC, in appeal COR-04-1657, when he alleged that the "ICC" violated his rights.

Plaintiff declares in his initial Complaint that he completed all levels of appeal at the prison before filing suit. (Cmp., Doc. 1 at 1-2 ¶I.) In the First Amended Complaint, Plaintiff declares, without providing documentary evidence, that his appeals CSP-COR-04-01175, CSP-COR-04-04608, CSP-COR-04-04105, CSP-COR-04-03310. CSP-COR-04-03924, CSP-COR-04-04301, and CSP-COR-05-00347 concerned "Custody Staff Complaint Harassment and Retalatory (*sic*)." (First ACP (Amended Complaint), Doc. 9 at 28 ¶g.) In the Second Amended Complaint, Plaintiff declares that he has exhausted "numerous administrative remedies" and refers to attached exhibits containing copies of appeals. (Second ACP, Doc. 18 at 2:16-21, Exhs. 20, 24, 26, 30, 31, 35, 39, 40, 44, 46, 47.) In the Third Amended Complaint, Plaintiff alleges that defendant Ortiz retaliated against him on May 22, 2003, March 13, 2003, and September 21, 2003, but provides no evidence of appeals regarding these allegations. (Third ACP, Doc. 26 at 19 ¶111, 20 ¶116, 21 ¶119.) In the Fourth Amended Complaint, Plaintiff declares that defendant Ortiz retaliated against him and that he filed appeals concerning all of the facts contained in the complaint. (Fourth ACP, Doc. 46 at 2, 17-18 ¶¶108-109.)

### D.     **Defendant's Reply**

Defendant concedes that Plaintiff filed numerous administrative appeals alleging that his placement in the CSP SHU was improper. However, Defendant argues that Plaintiff did not file any appeal alleging that Defendant Ortiz retaliated against him. Consequently, Defendant argues that Plaintiff failed to meet his burden under the PLRA, failing to show that he filed a grievance alerting the prison to the problem he had with the alleged retaliation by Defendant Ortiz that led to this litigation.

### E.     **Discussion**

This case now proceeds only on Plaintiff's retaliation claim against defendant D.D. Ortiz, based on Plaintiff's allegations that defendant D.D. Ortiz improperly retained him in the SHU after Plaintiff's arrival at CSP on January 9, 2003, in retaliation for Plaintiff filing prison appeals.

The Court has examined Defendant's evidence of Plaintiff's seven appeals submitted between January 23, 2003 and December 1, 2003, and finds no allegations by Plaintiff that defendant D.D. Ortiz retaliated against him. In appeal COR-03-1902 at the Second Level of Review, Plaintiff alleges that "A.W. (Associate Warden) Ortiz is clearly being evasive & deceptive and very vague;" however, Plaintiff does not allege retaliation. (Exh. A to Motion, Doc. 89-2 at 45.) The Court finds no other allegations by Plaintiff against defendant Ortiz in the seven appeals discussed by Defendant.

The Court has also examined all of Plaintiff's evidence of numerous other appeals and finds no evidence of an appeal alleging that defendant Ortiz retaliated against Plaintiff. While Plaintiff correctly argues that he is not required to specifically name defendant Ortiz in the appeal if he names him as the Associate Warden or the ICC, the Court finds no evidence that Plaintiff submitted an appeal alleging that the Associate Warden or the ICC retaliated against Plaintiff. Jones, 549 U.S. at 129 (the PLRA does not impose a "name all defendants" requirement as part of exhaustion).

Plaintiff's argument that he exhausted his remedies by providing notice of his allegations to defendant Ortiz and the prison is unpersuasive. Plaintiff argues that his appeals provided notice to Ortiz because Ortiz signed some of his appeals. Such notice is insufficient. Plaintiff was required, in his appeals, to alert the prison to a problem and facilitate its resolution, prior to filing suit. See Johnson v. Johnson, 385 F.3d at 522, *cited with approval in* Jones, 549 U.S. at 219; Griffin v. Arpaio (9th Cir. 2009) 557 F.3d 1117, 1120. The Court finds no evidence that Plaintiff submitted an appeal which notified the prison, or defendant Ortiz, that Ortiz was retaliating against him.

Plaintiff is advised that submitting a claim to the California Board of Control (CBOC) or writing a letter to the Warden is not sufficient to exhaust remedies under the PLRA. "[P]roper exhaustion of administrative remedies is necessary" and the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." Woodford, 548 U.S. at 83-84. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. at 90; Wilson v. Wann, No. CIV S-06-

1629 GEB KJM P, 2008 WL 4166886, at *2 (E.D.Cal. Sept.8, 2008) (plaintiff's letters to the Office of the Inspector General, Office of Internal Affairs, and the Warden were insufficient to show exhaustion). Therefore, neither Plaintiff's CBOC claim, nor his letter to the Warden, acted to exhaust his remedies.

Based on this evidence and analysis, the Court finds that Plaintiff has not provided sufficient evidence that he exhausted the remedies available to him before filing suit, in compliance with the requirements of § 1997e(a), and therefore Defendant is entitled to dismissal of this action.

## IV.   MOTION FOR SUMMARY JUDGMENT

The Court has found that Plaintiff failed to exhaust the available administrative remedies and that Defendant is entitled to dismissal of the action on this ground. Based on the Court's finding that Plaintiff did not exhaust the available administrative remedies prior to filing suit, the court shall not reach Defendant's other arguments. See Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 534 (7th Cir. 1999) (vacating judgment and remanding with instructions to dismiss for failure to exhaust in case where district court granted summary judgment to defendants on the merits and did not rule on their pending motion for dismissal based on failure to exhaust).

## V.   CONCLUSION AND RECOMMENDATIONS

Defendant Ortiz has met his burden of demonstrating that Plaintiff failed to exhaust his administrative remedies prior to filing suit, in compliance with § 1997e(a). Defendant has shown evidence that Plaintiff failed to exhaust his remedies by an inmate appeal pursuant to Title 15 of the California Code of Regulations § 3084.1, et seq., concerning Plaintiff's allegations in the complaint against Defendant in this action. Plaintiff has not shown that he exhausted all the remedies available to him. Therefore, Defendant is entitled to dismissal of this action, and Defendant Ortiz's motion to dismiss should be granted.

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that Defendant Ortiz's motion to dismiss for failure to exhaust remedies, filed on August 20, 2012, be GRANTED, and this action be DISMISSED without prejudice.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **thirty (30) days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 16, 2013**                             **/s/ Gary S. Austin**
                                                      UNITED STATES MAGISTRATE JUDGE